Mr. Chief Justice Johnson delivered the opinion of the Court. There can be no question but that the parties to this suit originally entered into a contract of partnership in the cultivation of the corn crop in 1846. The terms of the contract were that the appellant (Allen) was to furnish the land, three horses, and as many hands, and that the appellee (Davis) was to furnish one horse and one hand for the purpose of cultivating the crop, and when it should be gathered, Davis was to have, for his share, one-fifth, and Allen the residue. This contract was afterwards changed, and it was then agreed between them that Allen should put in two horses and as many hands, and that Davis should put in one horse and one hand, and that the latter, instead of one-fifth, should receive one-fourth of the crop, and that the former should be entitled to the residue. A partnership, as between the parties themselves, is a voluntary contract between two or more persons, for joining together their money, goods, labor and skill, or any or all of them, under an understanding that there shall be a communion of profit between them, and for the purpose of carrying on a legal trade, business or calling. See Collyer on Partnership, at page 2, and the notes at the bottom of the same page. Here, the parties; under an express agreement, joined together their horses, hands and labor, for the purpose of carrying on the business of cropping for the year 1846, and according to the contract they were to receive certain proportions of the proceeds, when matured and gathered. The effect of this contract, therefore, being to create a joint interest, and also a joint possession, and it not appearing what particular quantity each should receive, but left solely to depend upon the result of their joint labors, it is clear that, whilst this state of things continued, no action at law could be maintained by the one against the other. It is in proof, however, that the appellee, before the crop was finished, determined to leave the place, that he did so, with the consent of the appellant, but that before he left he made an agreement with the appellant, that ■ he should finish the crop and gather it, and then send it to New Orleans, and sell it, or sell it at home, as he should think best, and to pay himself fifty dollars out of his share, it being the price of a horse which he had purchased of him, and also to pay himself for his extra trouble in completing the cultivation, gathering and selling the crop, and it was further agreed that, in case there should be any thing remaining of the appellee’s share, after paying for the horse and the extra expenses occasioned by his absence in finishing, gathering and selling the crop, that the appellant should account to him for the same. By this latter contract, the appellant was expressly authorized by the appellee to take his share of the crop to New Orleans, or to sell it at home, as he might think fit, and after having thus disposed of .the same, to retain in his hands, a sum sufficient to satisfy him for his horse, and also his extra expenses in cultivating, gathering and selling said crop. Here was a power to sell, coupled with an interest in the proceeds of the sale, and consequently, such power, as has been repeatedly ruled by this court, was not subject to revocation by the party who made it. To this, it might be objected that, although such is the law, yet it cannot be allowed to prevail in this case, inasmuch as the court below instructed differently, and that no exception has been taken to that instruction. This would be a strong position in case the instructions were supported by facts going to show a revocation, or from which a jury would be authorized to draw such an inference. Such facts, however, we do not conceive to exist. True it is, that in the early part of 1847, after the appellee had returned from the service of the United States as a volunteer, and whilst the entire crop was lying in a pilé on the bank of White river, in readiness and waiting for a boat, he was heard to demand of the appellant a measurement of the corn before it was put upon the boat. He simply demanded a measurement before the crop should be taken into the boat, but never intimated a desire to revoke the authority theretofore given to the appellant to dispose of his share, and to retain a sufficiency of the proceeds to pay him for his horse, and his additional expenses in cultivating, gathering and disposing of the crop. There was certainly nothing in that which could amount to a revocation, or even to authorize a jury to infer it. All that could be legitimately inferred from it, was that he either had a curiosity to know what his share would amount to, or that he might have data from which he might be able after the appellant’s return to ascertain whether he had honestly and faithfully discharged the trust which he had reposed in him. There being no facts or circumstances upon which such an instruction coúld be predicated, it is clear, that whether correct or not, in point of law, it could have no practical operation. From this view of the case, it is manifest that, even admitting that the relation of partners had been broken up by the appointment of the one as the agent of the other in the sale and disposition of the proceeds, yet no action could arise to the party claiming the residue, without a demand made before the institution of suit. In this respect, the testimony is wholly at fault, nor does it even appear that the crop has been disposed of, and much less what would remain to be paid over to the appellee after the price of the horse and additional expenses of cultivating, gathering and disposing of the crop, had been deducted from his share. We have no hesitation, therefore, in saying that the verdict is not only contrary to the law, but that it is also unsupported by the evidence. The judgment of the Circuit Court of Independence county herein rendered, is consequently reversed, and the cause remanded, with instructions to be proceeded in according to law, and not inconsistent with this opinion.